EDWARD A. REED AND ELOISE A. REED, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4476–66. Filed July 29, 1968.

*Robert B. Pierce* and *R. Bert Magnuson,* for the petitioners.
*Charles S. Stroad,* for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in petitioners' 1964 income tax in the amount of $357.17.

The issue is whether petitioners are allowed exemption deductions of $600 for each of two "foster" children under the provisions of section 151(e)(1), I.R.C. 1954.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

The petitioners, Edward A. Reed and Eloise A. Reed, whose legal residence at the time the petition herein was filed was Detroit, Mich., filed their joint Federal income tax return for the year 1964 with the district director of internal revenue, Detroit, Mich.

Prior to 1964, the petitioners took into their home two foster children, Thomas Elston and John Bishop, both age 18 in 1964.

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise noted.

Thomas has resided in petitioners' home for more than 7 years and John has resided in petitioners' home for approximately 5 years.

Before the boys came to petitioners' home they had resided at the Methodist Children's Village in Detroit. They had been placed in this institution as a result of broken homes. Thomas' mother is still living and visits him on occasion. John's mother and father are alive but it is enough to say they no longer have any interest in him.

When Thomas and John were placed in petitioners' home, petitioners were required to sign a letter agreement that stated: "Our home will not be considered for the adoption of a child placed with us for foster home care." Actually this was required to end any confusion that a foster parent might think the foster child was adoptable and to protect the natural parents' rights in the event the natural parents' home developed so that the foster child could be returned and further to notify the foster parents of such fact. The letter was not an irrevocable commitment and could have been changed or eliminated and if eliminated, adoption proceedings could have been instituted by the foster parents.

Petitioners did not take any proceedings leading to adoption because Thomas' mother did occasionally visit him and petitioners were concerned about undesirable emotional or psychological problems if they started such adoption proceedings. They did not want to adopt John without adopting Thomas for they felt it would be unfair to adopt one and not the other.

In the year 1964 both boys had as their principal place of abode the home of petitioners and it is stipulated they each received over half of their support that year from petitioners. In 1964 John was a full-time student at Ferris Institute and Oakland University and Thomas was a full-time student at Albion College. Both boys worked part time in 1964. Thomas earned $916.08 and John earned $805.87 in 1964.

OPINION

The issue here is whether Thomas and John qualify as petitioners' dependents for the purpose of the $600 dependency credit exemption. Section 152 defines the term "dependent," insofar as applicable here, as follows:

SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

(1) A son or daughter of the taxpayer, or a descendant of either,

(2) A stepson or stepdaughter of the taxpayer,

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(9) An individual \* \* \* who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, or

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) RULES RELATING TO GENERAL DEFINITION.—For purposes of this section—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) In determining whether any of the relationships specified in subsection (a) or paragraph (1) of this subsection exists, a legally adopted child of an individual (and a child who is a member of an individual's household if placed with such individual by an authorized placement agency for legal adoption by such individual) shall be treated as a child of such individual by blood.

Petitioners contend Thomas and John qualify as their dependents under section 151(e)(1)(B).[2] This statute, the pertinent portions of which we have set forth in the footnote, provides that an individual who is a dependent, as defined in section 152 and who is also a child or stepchild of the taxpayer, within the meaning of section 152, and under 19 years of age or a student, will qualify for the dependency exemption, even if the individual's gross income was over $600. Here it is stipulated Thomas and John were under 19 years of age and students and each earned over $600 during the year in issue. The only issue is whether they can be considered "a child of the taxpayer." They were not the natural-born children of the taxpayers but petitioners argue the term "child of the taxpayer" in the statute should be interpreted to include the foster child or a child who is not the natural-born child of the taxpayers or either of them but reared in taxpayers' home as a member of the taxpayers' household and family.

---

[2] SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

(e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—

(1) IN GENERAL.—An exemption of $600 for each dependent (as defined in section 152)—

(A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or

(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) CHILD DEFINED.—For purposes of paragraph (1)(B), the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer.

(4) STUDENT AND EDUCATIONAL INSTITUTION DEFINED.—For purposes of paragraph (1)(B)(ii), the term "student" means an individual who during each of 5 calendar months during the calendar year in which the taxable year of the taxpayer begins—

(A) is a full-time student at an educational institution; \* \* \*

Section 151(e)(3) provides the term "child" in section 151(a)(1)(B) means an individual who is, within the meaning of section 152, a son, stepson, daughter, or stepdaughter of the taxpayer. So the ultimate question here is whether the word "son" in section 152(a)(1) is to be defined as including a foster child of the taxpayers.

An examination of the statute, and various portions of its legislative history, shows quite clearly that only natural or adopted children (including children placed for adoption) fit within the definition of "son" in section 152.

To begin with, the very presence of "stepson" along with "son" in the classification is a rather clear indication the classification was to be limited to the natural son of one or both of the taxpayers.

The usual definition of a stepson or stepdaughter is the son or daughter by a former marriage of either the husband or the wife. Webster's New International Dictionary (2d ed.); *Flanagan* v. *Railroad Retirement Board*, 332 F. 2d 301, 303. This would seem to limit the meaning of the word "child" to the natural child of both or one of the taxpayers.

The strongest indication in the statute that a foster child of the taxpayers would not be within the definition of "son" in section 152 is contained in section 152(b)(2). Here provision is made for the legally adopted child (including a child placed in the home for adoption). The statute states that in determining the relationships specified in subsection (a), where the relationships of son and daughter are set forth, a legally adopted child of an individual "shall be treated as a child of such individual by blood." This is a clear indication that the word "son" in section 152(a)(1) is to mean a child of the taxpayer by blood. The statute (sec. 152(b)(2)) is, in effect, stating the word "son" in section (a) means the natural-born child of the taxpayers but the term is being expanded to include the legally adopted child or the child placed in the home for adoption. Petitioners do not argue the boys were adopted and, in fact, the record shows petitioners agreed not to adopt them.

Petitioners' argument that the term "son" in subsection (a) should be further expanded to include a foster child or an unadopted child that is being raised in taxpayers' home is not supported by any language in the statute. We have held the words "legally adopted" in section 152(b)(2) mean a child who meets all the requirements of adoption under State law. *Arthur Grossman*, 26 T.C. 234, *M. D. Harrison*, 18 T.C. 540.

There are two statements found in the legislative history of this statute that show rather conclusively that a foster child cannot be considered within the term "son" under section 152(a) and by reference

634

under section 151(e) (1) (B). The following is an excerpt from Senate Report No. 1622, 83d Cong., 2d Sess., p. 194 (1954) :

For example, under paragraph (9) [sec. 152(a)] the taxpayer will be entitled to claim a foster child (who is not legally adopted) as a dependent (*assuming the support and earnings tests are met*) provided the foster child is a member of the taxpayer's household * * * [Emphasis added.]

The above shows Congress had in mind the situation of taxpayers with unadopted foster children. They could qualify as dependents under section 152(a) (9), if they did not earn $600 and the support test was met. But they would not qualify under section 152(a) (1) where the classifications of "son" and "daughter" were specified.

There is another statement found in the legislative history of this statute when the requirement that the child must have been placed in the home for adoption was added to section 152(b) (2) in 1959. The Senate Report No. 913, 86th Cong., 1st Sess. (1959) (Pub. L. 86–376), stated the requirement that the placement in the home for adoption must have been by an authorized placement agency—

so that the Internal Revenue Service will have a means of distinguishing between cases where the child is placed in a home for adoption from those cases where the custody of the child is temporary and the individual has no intention of adopting the child. It is believed that this limitation will prevent abuse of the provision.

This clearly shows that the unadopted foster child in the home that was not placed there for adoption was not intended to be included as a son or daughter of the taxpayers.

Petitioners cite no legislative history and no judicial authority that would tend in any manner to support their claimed dependency for the children.

Petitioners' argument is that they complied with the spirit and meaning of the law in that they stood in the position and relationship of parents of the boys and we are urged not to give the word "child" in the statute a literal construction. Any effort on our part to construe the statute to include foster children would be "judicial legislation." The action of petitioners in taking on the burden of raising foster children in their home is most commendable. But Congress has limited the dependency exemption to such foster children who have not earned over $600. Only children of the taxpayer, including adopted children and those placed in the home for adoption, if under 19 or if they are students, can qualify as dependents if they have gross income of $600 or more.

We hold for respondent on the issue presented. The parties have settled another issue.

*Decision will be entered under Rule 50.*